**KUNA MEAT COMPANY,
Petitioner/Cross–
Respondent,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent/Cross–
Petitioner.**

Nos. 91–3260, 91–3470.

United States Court of Appeals,
Eighth Circuit.

Submitted April 17, 1992.

Decided June 10, 1992.

---

Jerome J. Duff, St. Louis, Mo., argued, for petitioner, cross-respondent.

Margaret E. Luke, Washington, D.C., argued (Linda Dreeben, Margaret Luke, Jerry M. Hunter, D. Randall Frye and Aileen A. Armstrong, on the brief), for respondent, cross-petitioner.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and ARNOLD,* District Judge.

MORRIS SHEPPARD ARNOLD, District Judge.

The United Food and Commercial Workers Union has represented the meatcutters at Kuna Meat Company in St. Louis, Missouri, for at least 20 years. The most recent contract with the union expired in April, 1988. In May, 1988, the union filed unfair labor practice charges with the National Labor Relations Board against the company. According to the administrative law judge who initially decided this case, those charges stemmed from the company's refusal to contribute to the health/welfare and pension plans then in force, a unilateral switch to a different medical insurance plan without bargaining with the union, the interrogation of employees about their union sympathies, and the withdrawal of recognition of the union, all unfair labor practices under federal law. *See* 29 U.S.C. § 158(a)(1), § 158(a)(5). In September, 1988, the company and the NLRB reached an informal settlement agreement. Under the terms of that agreement, the company restored recognition of the union and began collective bargaining negotiations as to a new contract.

Over the next two months, the company declared that it would not bargain beyond a two-month period and proposed various contract terms to the union. The final proposal would have allowed the company to decrease wages, increase the number of days in the work week, impose overtime and additional shifts without consultation with the union, hire part-time workers without consultation with the union, fire employees without having to submit to a grievance procedure or arbitration, eliminate the three-day pay previously given to workers injured on the job to cover the period before workers' compensation began, decide on a case-by-case basis whether to pay for sick leave, reduce annual vacations from a maximum of six weeks to a maximum of two weeks, decrease the number of holidays, and eliminate all job classifications in the bargaining unit except two. In November, 1988, the union informed the company that the bargaining unit employees had rejected the contract terms proposed.

In December, 1988, the company advised the union of the company's conclusion that

---

* The HONORABLE MORRIS S. ARNOLD, United States District Judge for the Western District of   Arkansas, sitting by designation.

it had bargained to impasse and was no longer obligated to bargain. The company advised that it was implementing the conditions described in its final contract offer and replacing the medical insurance plan previously in effect. In January, 1989, the company advised that it was withdrawing its recognition of the union and reducing vacation days of the bargaining unit employees. Three days later, the union again filed unfair labor practice charges with the NLRB against the company. In February, 1989, that complaint was consolidated with the previous complaint, and the previous settlement agreement was set aside and vacated.

In May, 1989, a hearing was held before an administrative law judge. By decision and order of September, 1990, the administrative law judge found that the company had engaged in unfair labor practices by interrogating employees about their union sympathies, setting time limits on contract negotiations, bargaining in bad faith, withdrawing recognition of the union, unilaterally implementing changes in working conditions, halting its contributions to the health/welfare and pension plans, and changing the medical insurance plan without consultation with the union. The administrative law judge recommended that the company be ordered to restore recognition to the union, bargain in good faith, revoke the changes in working conditions, restore the payments to the health/welfare and pension plans, reimburse bargaining unit employees for any expenses incurred as a result of the changes in the medical insurance plan, and reimburse bargaining unit employees for any wages lost between the time the original contract expired and the time good-faith bargaining leads to a contract or impasse. By order of September, 1991, the NLRB affirmed the administrative law judge's rulings and adopted the recommended remedial order. The company appeals for review of that order; the NLRB cross-applies for enforcement of the order.

Three issues are on appeal—whether the NLRB was estopped from processing the unfair labor practice charges because an NLRB compliance agent had been monitoring events under the informal settlement agreement, whether the company had bargained in good faith to impasse and therefore whether its withdrawal of recognition of the union was lawful, and whether circumstances in the company's workplace have changed so much since the remedial order was first recommended that enforcement of the order would be counterproductive. The NLRB is affirmed as to its adoption of the administrative law judge's findings on all three issues, and enforcement of the NLRB's remedial order is granted.

I.

■ After the informal settlement agreement was reached in September, 1988, the NLRB assigned a compliance agent to monitor the actions of the company and the union in accordance with the agreement. The company states that between September and December, 1988, it advised the NLRB compliance agent of each step it was taking in the collective bargaining negotiations; of its intention to change medical insurance plans; of its intention to declare an impasse if contract negotiations were not fruitful by early November, 1988; and of its intention to withdraw recognition of the union if impasse was reached. The company contends that the NLRB compliance agent never even suggested that its actions were not in accordance with the settlement agreement or warned it not to take any of those actions, and therefore that the NLRB should be estopped from pursuing unfair labor practice charges related to the company's acts either before or after the settlement agreement was executed. The company argues, in essence, that the NLRB compliance agent led, or at least allowed, it to act in the way that it did and, accordingly, was responsible for subsequent events.

The administrative law judge held that this affirmative defense had no merit. The court considers this conclusion by the administrative law judge to be a factual finding. Factual findings are to be upheld on judicial review if supported by "substantial evidence on the record considered as a

whole." *See* 29 U.S.C. § 160(e), § 160(f); *see also* 5 U.S.C. § 706(2)(E).

The court has read the transcript of the hearing before the administrative law judge and has reviewed the exhibits admitted in evidence. The record is unambiguous that the company had continuous access to its own counsel. The record, moreover, fails to support the assertion by the company that all of its actions were taken only after consultation with, and reliance on the advice of, the NLRB compliance agent. The court therefore affirms the holding of the NLRB that the company was not entitled to an estoppel.

■ There is ample evidence in the record, furthermore, to support the conclusion that the company never intended to bargain in good faith and deliberately set out to propose contract terms that it knew the union could, or would, never accept, so that the company could declare its relationship with the union at an end. The NLRB is therefore affirmed on these findings.

## II.

The company argues that so much time has now passed, and so many things have changed at its workplace, that enforcement of the NLRB's order would " 'mock reality,' " *National Labor Relations Board v. Mountain Country Food Store, Inc.*, 931 F.2d 21, 22 (8th Cir.1991), quoting *Emhart Industries, Hartford Division v. National Labor Relations Board*, 907 F.2d 372, 380 (2d Cir.1990). As the NLRB points out, however, the company offers no concrete examples. Finding no basis for doubting "the reasonableness and fairness," *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951), of the NLRB order, the court grants enforcement of that order to the NLRB.